

**ORDERED in the Southern District of Florida on November 4, 2013.**

**Paul G. Hyman, Chief Judge**
**United States Bankruptcy Court**

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

| | |
|---|---|
| IN RE: | CASE NO.: 09-36379-BKC-PGH |
| **Palm Beach Finance Partners, L.P. and Palm Beach Finance II, L.P.,** | **CHAPTER 11** |
| Debtors. / | |
| **Barry Mukamal,** | ADV. NO.: 11-03015-BKC-PGH-A |
| Plaintiff, | |
| v. | |
| **BMO Harris Bank N.A. as Successor by Merger to M&I Marshall & Ilsley Bank,** | |
| Defendants. / | |

### ORDER DENYING DEFENDANT'S MOTION TO STRIKE JURY DEMAND (ECF NO. 140)

**THIS MATTER** came before the Court for hearing upon the *Motion to Strike Jury Demand* (the "Motion to Strike") (ECF No. 140) filed by BMO Harris Bank N.A. as Successor by Merger to M&I Marshall & Ilsley Bank (the "Defendant"). The

Motion to Strike seeks an order striking the *Jury Demand* (ECF No. 109) filed by Barry Mukamal (the "Plaintiff") in his capacity as Liquidating Trustee for the Palm Beach Finance Liquidating Trust and the Palm Beach Finance II Liquidating Trust. For the reasons discussed below, the Court denies the Defendant's Motion to Strike.

## BACKGROUND

According to the allegations of the *Amended Complaint* (ECF No. 65), Palm Beach Finance Partners, L.P. and Palm Beach Finance II, L.P. (collectively, the "Debtors") were investors in the purchase financing operation run by Thomas Petters and Petters Company, Inc. (collectively, "Petters"). In soliciting investments, Petters represented to investors that investment funds would be used to finance consumer electronic merchandise transactions. Petters claimed he would arrange for the sale and delivery of consumer electronic merchandise from suppliers to "big box" retailers, such as Costco and Sam's Club. Based upon these representations, the Debtors and other investors wired funds directly to the bank accounts of Petters' two primary suppliers—Nationwide International Resources, Inc. ("Nationwide") and Enchanted Family Buying Company ("Enchanted," and together with Nationwide, the "Suppliers"). After receiving these wire transfers, the Suppliers were expected to ship the consumer electronic merchandise to retailers. The retailers were then to send payment for the merchandise to one of Petters' depository accounts, which was maintained by Petters with the Defendant (the "M&I Account"). In theory, those retailer funds were to be used first, to re-pay investors and second, to pay a commission to Petters.

Petters, however, was not operating a legitimate purchase financing operation. Petters was running a Ponzi scheme[1]—there were no purchase orders, no merchandise, no retailers, no sales to any retailers, and no payments from any retailers. Instead, according to the allegations of the Amended Complaint, after receiving wire transfer funds from investors, the Suppliers would deduct a commission and then remit the remaining funds to the M&I Account. Thereafter, the funds were allegedly used to repay earlier investors and to fund Petters' lavish lifestyle.

The Plaintiff alleges that the Defendant, as Petters' primary depository bank, is liable to the Plaintiff for allegedly fraudulent transfers received from the Suppliers. The Plaintiff, in his Amended Complaint, asserts four causes of action[2] against the Defendant: (1) avoidance and recovery of fraudulent transfers pursuant to 11 U.S.C. § 541 and Florida Statute § 726.105; (2) avoidance and recovery of fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B) and § 550; (3) avoidance and recovery of fraudulent transfers pursuant to 11 U.S.C. § 544 and Florida

---

[1] In September 2008, Petters' purchase financing operation was exposed as a Ponzi scheme. In October 2008, Petters was arrested and charged with mail and wire fraud, conspiracy to commit mail and wire fraud, money laundering, and conspiracy to commit money laundering. By April 2010, Petters had been found guilty on all counts and sentenced to 50 years in prison. As a result of this collapse, Petters Company Inc. and other related entities filed voluntary bankruptcy petitions in the United States Bankruptcy Court for the District of Minnesota.

[2] Initially, the Plaintiff's Amended Complaint contained ten separate causes of action. However, the Court dismissed the following causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim: aiding and abetting fraud, fraudulent inducement, fraudulent misrepresentation, conspiracy to commit fraud, gross negligence, and breach of fiduciary duty. *See Order Granting in Part and Denying in Part Defendants' Motion to Dismiss* (ECF No. 113). Although the Court's dismissal was without prejudice, the Plaintiff chose to proceed without filing a second amended complaint. *See Liquidating Trustee's Notice of Intent to Proceed without Filing Second Amended Complaint* (ECF No. 117). Accordingly, only four causes of action remain pending.

Statutes § 726.105(1)(b) and § 726.108; and (4) avoidance and recovery of fraudulent transfers pursuant to 11 U.S.C. § 544 and Florida Statutes § 726.106 and § 726.108.

Citing the conventional fraudulent transfer provisions of the Bankruptcy Code, Counts 2, 3, and 4 seek to recover from the Defendant the same category of transfers: monetary transfers made by the Debtors to the Suppliers and then by the Suppliers to the Defendant (the "Conventional Fraudulent Transfer Claims"). Count 1, on the other hand, seeks to recover fraudulent transfers made by the Suppliers to the Defendant on a relatively uncommon theory. According to the Plaintiff's allegations, prior to filing for bankruptcy protection, the Debtors possessed state law fraudulent transfer claims against the Defendant by virtue of: (1) the Debtors' alleged status as pre-petition creditors of the Suppliers; and (2) state fraudulent transfer laws which enable a creditor of a transferor to seek avoidance and recovery of a fraudulent transfer from a third party transferee. When the Debtors' filed for bankruptcy protection, all of the Debtors' pre-petition claims became property of the Debtors' bankruptcy estate pursuant to 11 U.S.C. § 541. The Plaintiff, as the Debtors' Liquidating Trustee, was thus able to step into the shoes of the Debtors and assert the pre-petition claims which the Debtors themselves could have asserted prior to filing for bankruptcy. Therefore, Count 1 (the "Section 541 Fraudulent Transfer Claim") differs from the Conventional Fraudulent Transfer Claims in that it seeks avoidance and recovery of monetary transfers made by one third party, the Suppliers, to another third party, the Defendant, without any allegation that the funds at issue are traceable to property of the Debtors.

Pursuant to Federal Rule of Bankruptcy Procedure 9015, the Plaintiff filed a timely demand for a jury trial on "all issues so triable." *See* Pl.'s Jury Demand. The Plaintiff and the Defendant also filed their *Consent to Bankruptcy Court Conducting Jury Trial* (the "Joint Consent") (ECF No. 110), in which the parties consented "to a trial by jury in this adversary proceeding of all issues so triable, by and before the Bankruptcy Court." Subsequently, the Defendant filed the Motion to Strike now before the Court, asserting that the Plaintiff, as the Debtors' Liquidating Trustee, has no right to a jury trial on any of the fraudulent transfer claims. The Plaintiff filed a *Response in Opposition to the Defendant's Motion to Strike* (the "Defendant's Response") (ECF No. 152), arguing that the Defendant's Motion to Strike should be denied for two reasons: (1) the Defendant consented to a jury trial on all claims by filing, along with the Plaintiff, the Joint Consent, and cannot now withdraw that consent absent the Plaintiff's permission; and (2) under the Seventh Amendment, the Plaintiff is entitled to a jury trial on all four fraudulent transfer claims. After conducting a hearing on the Motion to Strike (the "Hearing"), the Court took the matter under advisement.

## CONCLUSIONS OF LAW

### I.   The Joint Consent is not determinative

To begin with, the Plaintiff contends that the Defendant's Motion to Strike must be denied because the Joint Consent filed by both the Plaintiff and the Defendant constitutes the Defendant's consent to a jury trial or an independent jury demand. However, as the Court stated on the record at the hearing, the Court finds

that the Defendant did not demand a jury trial or consent to a jury trial on all issues and claims by filing the Joint Consent. Instead, the Defendant merely consented to the Bankruptcy Court conducting the jury trial in the event that the Plaintiff does indeed have a jury trial right on any or all of the issues before the Court. The title of the Joint Consent, "Consent to Bankruptcy Court Conducting Jury Trial," and the language used by the parties in the Joint Consent, particularly the inclusion of the limiting phrase "so triable," lead the Court to the conclusion that the Defendant did not intend to waive its right to object to the Plaintiff's jury demand.

## II.    **Seventh Amendment analysis**

### A.    The analytical framework

The Seventh Amendment to the United States Constitution provides: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved[.]" The Supreme Court of the United States has "consistently interpreted the phrase 'Suits at common law' to refer to 'suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.'" *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41, 109 S.Ct. 2782, 106 L.Ed. 2d 26 (1989). "The Seventh Amendment thus applies not only to common-law causes of action, but also to 'actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to

those customarily heard by courts of equity or admiralty.'" *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 348 (1998) (*quoting Granfinanciera*, 492 U.S. at 42, 109 S.Ct. 2782, 106 L.Ed. 2d 26).

Based upon this interpretation of the Seventh Amendment, the Supreme Court has developed a two-step analysis that courts must utilize when considering whether a right to trial by jury exists. First, the Court must "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity" and "examine the remedy sought" in order to determine whether the action is legal or equitable in nature. *Granfinanciera*, 492 U.S. at 42, 109 S.Ct. 2782, 106 L.Ed. 2d 26 (*quoting Tull v. U.S.*, 481 U.S. 412, 417-418, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987)). Second, if the first step indicates that there is a right to a jury trial, the Court "must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder." *Id*.

B. Step one—comparison to actions brought in 18th-century England and determination of the nature of the relief sought

In his Jury Demand, the Plaintiff asserts that he has the right to a jury trial on all four causes of action asserted in his Amended Complaint. Although, as discussed above, the Section 541 Fraudulent Transfer Claim differs significantly from the Conventional Fraudulent Transfer Claims, each of the four causes of action is a statutory fraudulent transfer claim.

The Supreme Court of the United States has stated that "[t]here is no dispute that actions to recover preferential or fraudulent transfers were often brought at

7

law in late 18th-century England." *Granfinanciera*, 492 U.S. at 43, 109 S.Ct. 2782, 106 L.Ed. 2d 26. In fact, the Supreme Court in *Granfinanciera* held that the respondent, a bankruptcy trustee for a corporation undergoing chapter 11 reorganization, "would have had to bring his action to recover an alleged fraudulent conveyance of a determinate sum of money at law in 18th century England, and that a court of equity would not have adjudicated it." *Id*. at 46-47, 109 S.Ct. 2782, 106 L.Ed. 2d 26. In so holding, the *Granfinanciera* Court noted that although courts of equity sometimes had concurrent jurisdiction with courts of law over fraudulent transfer actions in 18th century England, when the relief sought by the plaintiff in a fraudulent transfer action was solely monetary, courts of equity never had jurisdiction over the action. *Id*. at 43-44, 109 S.Ct. 2782, 106 L.Ed. 2d 26. Accordingly, fraudulent transfer causes of action which seek purely monetary relief are actions at law which would have been adjudicated in the courts of law in 18th century England.

Here, all four of the Plaintiff's causes of action are fraudulent transfer actions which seek purely monetary relief. All four causes of action asserted by the Plaintiff in the Amended Complaint thus seek legal rather than equitable relief and would have been adjudicated by the courts of law in 18th century England. Accordingly, the step one analysis suggests that there is a right to a jury trial.

C.   <u>Step two—determination of whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder</u>

Because the Court finds that that the step one analysis indicates that the Plaintiff is entitled to a jury trial, the Court must address step two and determine

whether Congress may assign and has assigned resolution of the claims at issue to a non-Article III adjudicative body which ordinarily does not use a jury as a factfinder. As the Supreme Court of the United States explained in *Granfinanciera*, "Congress may fashion causes of action that are closely analogous to common-law claims and place them beyond the ambit of the Seventh Amendment by assigning their resolution to a forum in which jury trials are unavailable." *Granfinanciera*, 492 U.S. at 52, 109 S.Ct. 2782, 106 L.Ed. 2d 26. However, "Congress' power to do so is limited." *Id*. "Unless a legal cause of action involves 'public rights,' Congress may not deprive parties litigating over such a right of the Seventh Amendment's guarantee to a jury trial." *Id*. at 53, 109 S.Ct. 2782, 106 L.Ed. 2d 26.

By passing the Bankruptcy Reform Act of 1978 and the amendments thereto, Congress created numerous causes of action and assigned their resolution to a non-Article III forum in which jury trials are generally unavailable: the bankruptcy courts. However, as just discussed, Congress' power to make such an assignment is limited, and when a litigant demands a jury trial, the Court must determine whether the assignment of a particular cause of action improperly infringes on the litigant's Seventh Amendment rights. In order to make that determination, the Court must decide whether the cause of action at issue involves "public rights." Simply put, if the cause of action does *not* involve public rights, the litigants retain their Seventh Amendment right to trial by jury despite Congress' assignment of the cause of the action to the bankruptcy courts.

The crucial question which must be answered when determining whether a cause of action involves public rights is "whether 'Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, [has] create[d] a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary.'" *Id*. at 54, 109 S.Ct. 2782, 106 L.Ed. 2d 26 (citations omitted). "If a statutory right is not closely intertwined with a federal regulatory program Congress has power to enact, and if that right neither belongs to nor exists against the Federal Government, then it must be adjudicated by an Article III court. If the right is legal in nature, then it carries with it the Seventh Amendment's guarantee of a jury trial." *Id*. at 54-55, 109 S.Ct. 2782, 106 L.Ed. 2d 26.

In *Granfinanciera*, the Supreme Court determined that a bankruptcy trustee's action to recover a fraudulent transfer under 11 U.S.C. § 548 was an action at law that implicated only private rights when the defendant to the action had not asserted a claim against the bankruptcy estate. *Id*. at 55, 109 S.Ct. 2782, 106 L.Ed. 2d 26. The *Granfinanciera* Court explained:

> There can be little doubt that fraudulent conveyance actions by bankruptcy trustees . . . are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res. . . . They therefore appear matters of private rather than public right. . . .
>
> . . . Because [defendants] here . . . have not filed claims against the estate, [the trustee's] fraudulent conveyance action does not arise "as

> part of the process of allowance and disallowance of claims." Nor is
> that action integral to the restructuring of debtor-creditor relations.
> Congress therefore cannot divest petitioners of their Seventh
> Amendment right to a trial by jury.

*Granfinanciera*, 492 U.S. at 56, 109 S.Ct. 2782, 106 L.Ed. 2d 26 (*citing Schoenthal*

*v. Irving Trust Co.*, 287 U.S. 92, 94-95, 53 S.Ct. 50, 77 L.Ed. 185 (1932)).

Justice Brennan, writing for the Court, further emphasized that "[t]he

restructuring of debtor-creditor relations, which is at the core of the federal

bankruptcy power, must be distinguished from the adjudication of state-created

private rights, such as the right to recover contract damages . . . . The former may

well be a public right, but the latter obviously is not." *Id.* at 56 n.12, 109 S.Ct. 2782,

106 L.Ed. 2d 26 (internal quotation marks omitted) (*quoting N. Pipeline Constr. Co.*

*v. Marathon Pipe Line Co.*, 458 U.S. 50, 71, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)).

Because the Bankruptcy Reform Act of 1978 and its Amendments codified

fraudulent transfer law within the Bankruptcy Code, the issue of whether such

fraudulent transfer causes of action adjudicate public rights is not as clear-cut as

with a breach of contract cause of action. However, the key to the analysis is that by

codifying fraudulent transfer law within the Bankruptcy Code, Congress did not

"creat[e] a new cause of action, and remedies therefor, unknown to the common law,

because traditional rights and remedies were inadequate to cope with a manifest

public problem." *Id.* at 60, 109 S.Ct. 2782, 106 L.Ed. 2d 26 (internal quotation

marks omitted) (*quoting Atlas Roofing Co. v. Occupational Safety and Health*

*Review Comm'n*, 430 U.S. 442, 454-455, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977)).

Instead, "Congress simply reclassified a pre-existing, common-law cause of action

that was not integrally related to the reformation of debtor-creditor relations and that apparently did not suffer from any grave deficiencies. This purely taxonomic change cannot alter [the] Seventh Amendment analysis." *Id*. at 60-61, 109 S.Ct. 2782, 106 L.Ed. 2d 26.

Here, it is evident that all four of the Plaintiff's fraudulent transfer causes of action adjudicate private rights. The Conventional Fraudulent Transfer Claims are asserted by the Plaintiff, the Debtor's Liquidating Trustee, pursuant to Sections 544 and 548 of the Bankruptcy Code. The 541 Fraudulent Transfer Claim is asserted by the Plaintiff pursuant to Section 541 of the Bankruptcy Code and state fraudulent transfer law. It is undisputed that the Defendant has not filed a claim against the Debtors' bankruptcy estates.[3] Accordingly, pursuant to the Supreme Court's holding in *Granfinanciera*, the Court finds that the Plaintiff's fraudulent transfer claims involve purely private rights as they do not implicate, in any way, the claims allowance process or the restructuring of debtor-creditor relations.

D.    The waiver theory

The bulk of the Defendant's Motion to Strike focuses on the "waiver" theory. The idea behind the waiver theory is that by submitting themselves to the equitable jurisdiction of the bankruptcy courts, debtors and trustees waive their Seventh Amendment jury trial rights. When courts apply this theory, they usually do so in regards to a debtor who has demanded a jury trial and hold that the debtor forfeits any preexisting jury trial right either by: (1) filing a voluntary bankruptcy petition

---

[3] A review of the claims registers in the Debtors' underlying bankruptcy cases reveals that the Defendant has not filed a claim in either of the Debtors' underlying bankruptcy cases.

and invoking the equitable jurisdiction of the bankruptcy court; or (2) commencing an avoidance proceeding, which invokes the equitable process of determining and distributing the property of the bankruptcy estate to creditors. The Defendant here, however, contends that the Plaintiff, the Debtor's Liquidating Trustee, forfeited his right to a jury trial because pursuant to 11 U.S.C. § 541, he stands in the shoes of the debtor who has no jury trial right and because he instituted an avoidance proceeding in the bankruptcy court. For the reasons discussed below, the Court disagrees with both of the Defendant's arguments, and finds that the waiver theory is inapplicable.

To begin with, the right to a jury trial under the Seventh Amendment is fundamental, and "courts [must] indulge every reasonable presumption against waiver." *Hays v. Equitex Inc. (In re RDM Sports Grp., Inc*.), 260 B.R. 915, 924 (Bankr. N.D. Ga. 2001) (*citing Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 (1937)); *see also, NDEP Corp. v. Handl–It, Inc. (In re NDEP Corp.)*, 203 B.R. 905, 912–13 (D. Del. 1996) (stating that "courts should not be eager to embrace an implied waiver of constitutional rights where there is an affirmative and timely assertion of those rights"). Nothing in the Bankruptcy Code expands or diminishes a litigant's right to a jury trial under the Seventh Amendment, under any applicable state constitution guarantee, or under any applicable statute. *Feltman v. Rosenbert, Rich, Baker, Berman & Co. (In re Certified HR Servs. Co*.), No. 07–61169–CIV–ZLOCH, 2008 WL 9424996, at *3 (S.D. Fla. May. 30, 2008) (*citing Energy Res. Co., Inc. v. Rosen (In re Energy Res. Co., Inc*.), 49 B.R. 278, 281

(Bankr. D. Mass. 1985) In fact, the Code is silent on the right of a debtor, trustee, or creditor to a jury trial in bankruptcy cases and proceedings.

Furthermore, as discussed in detail above, the Supreme Court of the United States has never applied a broad waiver theory to debtors or bankruptcy trustees. Instead, the Supreme Court's decisions have focused on whether the claims allowance process was triggered by the filing of the cause of action which is the subject of the jury trial demand. *See, e.g., Katchen v. Landy*, 382 U.S. 323, 337, 86 S.Ct. 467, 476, 15 L.Ed.2d 391 (1966) (determining that "there is no Seventh Amendment right to a jury trial for determination of objections to claims"); *Granfinanciera*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) (holding that a non-creditor defendant to a fraudulent transfer action had a jury trial right because the fraudulent transfer action did not trigger the claims allowance process); *Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990) *reh. den.,* 498 U.S. 1043, 111 S.Ct. 721, 112 L.Ed.2d 709 (1991) (reaffirming that *Granfinanciera* clearly established that the filing of a claim by a creditor triggered the claims allowance process, thereby subjecting the creditor to the equitable jurisdiction of the bankruptcy court and holding that if the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process and is thus integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction). The Eleventh Circuit Court of Appeals has also never applied the waiver theory.

i.      *Cases which support a broad waiver theory*

The Defendant, therefore, relies on several non-binding cases from other courts.[4] To begin with, the Defendant cites to *Hallahan and Assocs. v. N.I.S. Corp. (In re Hallahan)*, 936 F.2d 1496 (7th Cir. 1991). In *Hallahan,* the Seventh Circuit Court of Appeals held that a debtor who filed a voluntary petition in bankruptcy had no right to a jury trial in a dischargeability proceeding brought by a creditor who filed a proof of claim. *In re Hallahan*, 936 F.2d at 1505-06. In making this determination, the *Hallahan* Court distinguished *Granfinanciera* and *Langenkamp*, noting that "dischargeability proceedings are unlike actions to recover preferential transfers in that historically they have been equitable actions tried without juries." *Id.* at 1505. However, the *Hallahan* Court went further, and in *dicta*, stated, "Even if we were to assume that the dischargeability action was legal in nature, however, [the debtor] cannot claim a right to jury trial because, as a Chapter 7 debtor, he voluntarily submitted his case to bankruptcy court." *Id.* The court reasoned:

> [I]f creditors "by presenting their claims . . . subject[ ] themselves to all the consequences that attach to an appearance," . . . thereby losing any jury trial right otherwise guaranteed by the Seventh Amendment, debtors who initially choose to invoke the bankruptcy court's jurisdiction to seek protection from their creditors cannot be endowed with any stronger right.

*Id.* (*quoting Granfinanciera*, 492 U.S. at 59 n.14, 109 S.Ct. 2782, 106 L.Ed. 2d 26).

---

[4] The Defendant cites several other nonbinding opinions in addition to the three discussed in depth by the Court. *See, e.g., Hickman v. Hana (In re Hickman)*, 384 B.R. 832 (9th Cir. B.A.P. 2008); *Official Emp't-Related Issues Committee v. Lavorato (In re Enron Corp.)*, 319 B.R. 122 (Bankr. S.D. Tex. 2004); *Crews v. Lyons (In re Lyons)*, 200 B.R. 459 (Bankr. S.D. Ga. 1994); *Mid Am. Concrete Constr., Inc. v. Sears Roebuck & Co.*, No. 91 C 6286, 1993 WL 177140 (Bankr. N.D. Ill. May 6, 1993). However, none of these opinions are persuasive.

The Defendant also cites to *Longo v. McLaren (In re McLaren)*, 3 F.3d 958 (6th Cir. 1993). Like the *Hallahan* Court, the Sixth Circuit Court of Appeals in *McLaren* was faced with the issue of whether a debtor in bankruptcy had a right to a jury trial in the dischargeability action filed against him by one of his creditors. *In re McLaren*, 3 F.3d at 959-960. The *McLaren* Court cited extensively to the *Hallahan* decision and ultimately reached the same sweeping conclusion as the *Hallahan* Court: "the Seventh Amendment confers no right to a jury trial on a debtor . . . who files voluntarily for bankruptcy and is a defendant in an adversary proceeding." *Id*. at 961.

The final case cited to by the Defendant is *Kapila v. Bank of America, N.A. (In re Pearlman)*, 493 B.R. 878 (Bankr. M.D. Fla. 2013), a recent case issued by the United States Bankruptcy Court for the Middle District of Florida. In *Pearlman*, the chapter 11 trustee requested a jury trial in an adversary proceeding to avoid and recover alleged fraudulent transfers by the chapter 11 debtors to the defendant, a creditor who had filed a proof of claim against the debtors' bankruptcy estate. 493 B.R. at 880. The defendant objected to the trustee's jury trial demand, and the court denied the jury trial demand for three reasons, two of which are relevant to the Court's discussion here.[5] *Id*. at 882. First, the *Pearlman* Court held, unremarkably, that the trustee was not entitled to a jury trial because the defendant was a creditor who filed a proof of claim. *Id*. at 885. More importantly, however, the court went beyond this holding and stated that a bankruptcy trustee is *never* entitled to a jury

---

[5] The *Pearlman* Court also held that the trustee was not entitled to a jury trial because the trustee was bound by the jury trial waiver contained in the contractual agreement between the debtor and the defendant. *In re Pearlman*, 493 B.R. at 884-885.

trial in an avoidance action. Despite discussing the Supreme Court's *Granfinanciera* analysis in the preceding section, the *Pearlman* Court reasoned that "a trustee loses [the right to a jury trial] by invoking the avoidance process 'because it directly addresses the property of the bankruptcy estate, the eventual amount of claims against the estate, and the distribution of the property of the bankruptcy estate, all of which involve the equitable bankruptcy process.'" *Id*. at 888 (*quoting Official Emp't-Related Issues Committee v. Lavorato (In re Enron Corp.)*, 319 B.R. 122, 127 (Bankr. S.D. Tex. 2004)).

The factual scenarios in *Hallahan*, *McLaren*, and *Pearlman* differ significantly from the scenario presently before the Court. To begin with, the causes of action at issue in both *Hallahan* and *McLaren* were dischargeability actions. Dischargeability actions, as the *Hallahan* and *McLaren* Courts noted, are historically equitable actions which are integral the adjustment of the relationship between debtors and creditors. The causes of action at issue here are fraudulent transfer actions. The Supreme Court clearly held in *Granfinanciera* that fraudulent transfer actions are legal, not equitable, actions which would have been tried by courts of law in 18th-century England. Additionally, the party demanding a jury trial in both *Hallahan* and *McLaren* was the debtor-defendant. In the proceeding currently before the Court, the party demanding a jury trial is neither the debtor nor the defendant. Instead, the Plaintiff, who is the Debtors' Liquidating Trustee, is the party requesting a jury trial. Finally, and most importantly, in *Hallahan*, *McLaren*, and *Pearlman*, each party opposing the jury trial demand was a creditor

who had filed a proof of claim, or its equivalent, against the debtor's bankruptcy estate. Accordingly, principles of reciprocity and fairness played a role in each court reaching the conclusion that it did: if the creditor would be unable to assert the right to a jury trial, the debtor or the trustee should also be barred from demanding a jury trial. Here, no such reciprocity concerns arise. The Defendant filed no proof of claim against the Debtors' bankruptcy estate and thus, would undoubtedly have been entitled to a jury trial if it had requested one.

In addition to these factual dissimilarities, the *Hallahan*, *McLaren,* and *Pearlman* decisions misapprehend *Granfinanciera* and *Langenkamp* and the reasoning employed by the Supreme Court to reach those decisions. As discussed in detail above, the Supreme Court in *Granfinanciera* based its decision on the idea that filing a proof of claim, the creditor triggered the claims allowance process, a process which is equitable in nature and ultimately results in the adjustment of the claims against the bankruptcy estate:

> [S]ince the bankruptcy claims adjudication process is equitable in nature, the legal claims of the creditor, (by filing a proof of claim), and those of the debtor, (by submitting a lawsuit which is interconnected with the creditor's claim for resolution by the bankruptcy court), are transformed into an equitable dispute over a share of the bankruptcy estate, to which there is no right to a jury trial. So, when a debtor files a lawsuit involving issues which are interrelated to the allowance of the creditor's claim, that is, where the merits of that lawsuit must be decided before the creditor's claim can be resolved, that lawsuit becomes part of the claims allowance process. Hence, neither the debtor nor the creditor has a right to a jury trial.

*Andrews v. AmSouth Bank (In re Andrews)*, Adv. No. 06–40016–BGC, 2007 WL 2819523, at *4 (Bankr. N.D. Ala. Sept. 26, 2007). Based upon this reasoning, the

reciprocity concerns of the *Hallahan*, *McLaren,* and *Pearlman* Courts do not arise. A debtor or trustee who asserts a fraudulent transfer claim against a creditor who has filed a proof of claim has no greater right to a jury trial than the creditor who filed a proof of claim. In fact, in the proceeding before the Court, a reciprocity concern would only arise if the Court *denied* the Plaintiff's Jury Demand as the Defendant would have been entitled to a jury trial had it requested one. Moreover, as Justice White points out in his dissent, "the majority in *Granfinanciera* rejected the argument that lies at the heart of the alternative holding in *Hallahan*—that the filing of the bankruptcy case itself somehow forfeits all Seventh Amendment rights in actions by a debtor to gather the bankruptcy estate." *WSC, Inc. v. The Home Depot Inc. (In re WSC, Inc.*), 286 B.R. 321, 327 (Bankr. M.D. Tenn. 2002) (*citing Granfinanciera*, 492 U.S. at 71-74, 109 S.Ct. 2782, 106 L.Ed. 2d 26 (White, J., dissenting)).

Furthermore, the *Pearlman* Court's analysis fails to take into account scenarios in which the defendant is not a creditor of the estate and scenarios in which the fraudulent transfer claims are not asserted pursuant to Sections 544 or 548 of the Bankruptcy Code. First, the court's statement that a fraudulent transfer action "directly addresses the property of the bankruptcy estate, the eventual amount of claims against the estate, and the distribution of the property of the bankruptcy estate" is simply not always true. For instance, a fraudulent transfer action against a defendant who is not a creditor of the estate does not in any way address the eventual amount of claims against the estate and is not integral to the

19

restructuring of debtor-creditor relations. Likewise, a fraudulent transfer action asserted under Section 541 of the Bankruptcy Code and state fraudulent transfer law does not address property of the bankruptcy estate or the distribution of property of the bankruptcy estate. Instead, an action asserted pursuant to Section 541 seeks to recover, under state fraudulent transfer law, a fraudulent transfer made by a third party (a pre-petition debtor of the bankruptcy debtor) to another third party. This type of cause of action is simply an asset of the bankruptcy estate like any other pre-petition cause of action held by a bankruptcy debtor. Thus, by prosecuting the action, the trustee is not seeking to recover property of the bankruptcy estate any more than he would be if he was prosecuting a pre-petition personal injury action. Rather the trustee is simply seeking to recover additional funds which may be distributed to unsecured creditors.

Put simply, the purpose of *any* fraudulent transfer action brought against a non-creditor is to augment the property of the bankruptcy estate so as to increase the funds available for distribution to creditors. In *Granfinanciera*, the Supreme Court held that these types of fraudulent transfer actions are legal actions that address private rights which "are not magically converted into equitable issues by their presentation to a court of equity." 492 U.S. at 52, 109 S.Ct. 2782, 106 L.Ed. 2d 26. Further, a fraudulent transfer action asserted against a non-creditor is not integral to the restructuring of debtor-creditor relations. Indeed, it was this fact which was crucial to the Supreme Court's determination that this type of action

adjudicates private rights and that a defendant thus had a right to a jury trial. *Granfinanciera,* 492 U.S. at 55, 109 S.Ct. 2782, 106 L.Ed. 2d 26.

       *ii.*     *Cases which reject a broad waiver theory*

Numerous courts agree with this Court's determination that application of a broad waiver theory is inappropriate and that a trustee does indeed have a right to a jury trial under appropriate circumstances. In *Germain v. Connecticut National Bank*, for instance, the Second Circuit Court of Appeals considered whether a chapter 7 trustee was entitled to a jury trial on the trustee's causes of action for (1) tortious interference with the debtor's business, (2) coercion and duress, (3) breach of the contractual duty of good faith, (4) unfair or deceptive business practices, and (5) misrepresentation. 988 F.2d 1323, 1325-26 (2d Cir. 1993). The defendant opposed the trustee's jury trial demand, arguing that (1) the trustee's claims were not legal in nature, and (2) if they were, the trustee waived his right to a jury trial or was not entitled to a jury trial under the public rights doctrine. *Id*. at 1326. First, the *Germain* Court determined that the trustee's claims were not part of the claims-allowance process: "[S]uits like the Trustee's action in this case which would augment the estate but which have no effect on the allowance of a creditor's claim simply cannot be part of the claims-allowance process." *Id*. at 1327. The court specifically rejected the defendant's argument that none of the trustee's claims were legal claims because "none of the claims would have historically been tried before a jury because they arose during and are integrally related to equitable bankruptcy proceedings." *Id*. at 1329.

The *Germain* Court also undertook an in-depth analysis of the waiver theory. Explaining why the defendant's waiver theory argument was untenable, the court stated:

> The argument runs in three steps: (1) a creditor who submits a proof of claim loses its right to a jury trial, (2) there is no principled reason to distinguish between a debtor and its creditor for these purposes, and (3) if a debtor has no right to a jury trial, neither can the debtor's estate or the trustee.
>
> The argument collapses at the first step. . . . [T]he *Katchen*, *Granfinanciera*, and *Langenkamp* line of Supreme Court cases stands for the proposition that by filing a proof of claim a creditor forsakes its right to adjudicate before a jury any issue that bears directly on the allowance of that claim-and does so not so much on a theory of waiver as on the theory that the legal issue has been converted to an issue of equity. It is reasonable that a creditor or debtor who submits to the equity jurisdiction of the bankruptcy court thereby waives any right to a jury trial for the resolution of disputes vital to the bankruptcy process, such as those involving the determination of who is a valid creditor and which creditors are senior in the creditor hierarchy. We will not presume that the same creditor or debtor has knowingly and willingly surrendered its constitutional right to a jury trial for the resolution of disputes that are only incidentally related to the bankruptcy process.

*Id*. at 1329-30. The *Germain* Court concluded, and this Court agrees, that "neither precedent nor logic supports the proposition that either the creditor or the debtor automatically waives all right to a jury trial whenever a proof of claim is filed. For a waiver to occur, the dispute must be part of the claims-allowance process or affect the hierarchical reordering of creditors' claims. Even there the right to a jury trial is lost not so much because it is waived, but because the legal dispute has been transformed into an equitable issue." *Id*. at 1330.

Other courts follow the general approach of the *Germain* Court and hold that a broad waiver theory is indefensible. *In re WSC, Inc.*, 286 B.R. at 326; *McKinstry v. Sergent*, Civil No. 11–133–ART, 2012 WL 3731304, at *6, *8 (E.D. Ky. Aug. 28, 2012) (affirming bankruptcy court's decision that a debtor waives its jury trial right only on those claims whose resolution is necessarily part of the process of the disallowance and allowance of claims); *In re RDM Sports Grp., Inc.*, 260 B.R. at 925 (declining to apply the waiver theory as to trustee's request for jury trial on legal claims asserted against non-creditor third parties in order to generate funds for the estate); *In re Capital Assocs. Intern., Inc.*, Adv. No. 03–2017, 2003 WL 26057510, at *7 (N.D. Tex. Aug. 6, 2003) (same as to debtor). These courts often note that the Supreme Court has not embraced the idea of wholesale forfeiture of Seventh Amendment rights in bankruptcy cases, even though the idea seems to underlie the decisions in cases like *Hallahan*, *McLaren*, and *Pearlman*. *In re WSC, Inc.*, 286 B.R. at 326. For instance, the United States Bankruptcy Court for the Middle District of Tennessee held that "[f]iling a bankruptcy case submits all of a debtor's property to the jurisdiction of the bankruptcy court—including suits to collect or augment the estate based on causes of action like those in this adversary proceeding. But these property rights are not converted into public rights by the mere filing of the bankruptcy case." *Id*. at 328. Similarly, the Fifth Circuit Court of Appeals determined that the filing of a bankruptcy petition does not constitute an automatic waiver of the debtor or the trustee's right to a jury trial, explaining:

> The petition for bankruptcy itself has nothing to do with whether the bankruptcy court can exercise equitable jurisdiction over a debtor's

23

pre-petition claims. Its only effect is to pass ownership and control of the claims to the estate and its representative, either a trustee or a debtor in possession. . . . The claims belong to the estate after the petition for bankruptcy is filed, but that does not mean that the claims are then within the court's equitable jurisdiction or that they somehow become equitable in nature. . . .

Nor do we find that the petition for bankruptcy somehow "waives" the debtor's jury trial right. The court in *Granfinanciera* specifically noted that its rationale rested not on the traditional concept of "waiver" but on the idea expressed in *Katchen* that the creditor subjected his claim to the bankruptcy court's equitable jurisdiction by filing it against the estate.

*In re Jensen*, 946 F.2d 369, 373-74 (5th Cir. 1991), *abrogation on other grounds recognized*, 77 F.3d 793 (5th Cir. 1996). Agreeing with the *Jensen* Court that the right to a jury trial is lost "through the conversion of a legal dispute to an equitable one, rather than through waiver," the Third Circuit Court of Appeals rejected the waiver approach as well. *Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1251-52 (3d Cir. 1994).

More recently, the United States District Court for the Southern District of New York held that a bankruptcy trustee was entitled to a jury trial in an action to recover a fraudulent transfer, stating unequivocally that "[l]ike other litigants, bankruptcy trustees . . . have rights under the Seventh Amendment." *Picard v. Katz*, 825 F.Supp.2d 484, 485-86 (S.D.N.Y. 2011). The *Picard* Court rejected the defendant's argument that the trustee waived his right to a jury trial by initiating the proceeding in the bankruptcy court, explaining that "adjudication of the Trustee's fraudulent transfer claims occurs here apart from the larger regulatory scheme Congress has enacted for 'allowance and disallowance' of claims" and that

24

the "regulatory scheme simply cannot take priority over the [t]rustee's Seventh Amendment right to a jury trial." *Id.* at 486-87.

### iii. The waiver theory is inapplicable

For the reasons discussed above, the Court agrees with the reasoning of the cases which reject a broad waiver theory and concludes that the broad waiver theory advanced by the Defendant is inapplicable. The Court finds that the Plaintiff, as the Debtors' Liquidating Trustee, in no way waived his Seventh Amendment right to a jury trial on his fraudulent transfer claims.

### E. "Code-created" claims

The Defendant contends that the Plaintiff's Conventional Fraudulent Transfer Claims are "Code-created" claims since they are brought pursuant to Sections 544 and 548 of the Bankruptcy Code and would not exist but for their inclusion in the Bankruptcy Code. Because the Plaintiff's Conventional Fraudulent Transfer Claims are "Code-created" claims, the Defendant contends that Plaintiff has no right to a jury trial. However, for the reasons discussed below, the Court finds that in appropriate circumstances, a litigant may possess a jury trial right as to a "Code-created" claim.

Not only does the Defendant cite no authority for his argument, but as discussed extensively above, the Supreme Court in *Granfinanciera* specifically held that the defendant in a fraudulent transaction action brought by a trustee pursuant to 11 U.S.C. §§ 548 and 550 was entitled to a trial by jury. If it were true no jury trial rights exist as to causes of action arising under the Bankruptcy Code, the Supreme Court's discussion in *Granfinanciera* would have begun and ended with

that simple statement. Instead, the Supreme Court engaged in a lengthy discussion as to whether the defendant to a "code-created" fraudulent transfer claim was entitled to a jury trial. Indeed, it is undisputed that "the fact that [a] cause of action . . . arises under [the Bankruptcy Code] rather than the common law does not necessarily entail that there is no right to a jury trial[.]" *Calaiaro v. Roberts (In re Roberts)*, 126 B.R. 678, 681 (Bankr. W.D. Pa. 1991); *Reibling v. Thermo Credit, L.L.C. (In re Trinsic, Inc.)*, Adv. No. 07–1089, 2008 WL 541297, at *5 (Bankr. S.D. Ala. Feb. 25, 2008) (stating that even if a matter is a core proceeding under the Bankruptcy Code, that fact does not destroy a jury trial right).

Accordingly, the Court is not persuaded by the Defendant's argument that the Plaintiff has no right to a jury trial on "Code-created" claims.

F.    <u>The Plaintiff has the right to a jury trial on all claims</u>

After applying the two-step analysis articulated by the Supreme Court in *Granfinanciera*, the Court finds that the Plaintiff has a Seventh Amendment right to a jury trial on all four fraudulent transfer claims. The Plaintiff's fraudulent transfer claims are actions at law which adjudicate private rights. Furthermore, neither the Debtors nor the Plaintiff waived their rights to a jury trial by filing for bankruptcy or by asserting the claims at issue in bankruptcy court. Finally, there is no support for the Defendant's argument that "Code-created" claims carry no jury trial right. Accordingly, the Plaintiff is entitled to a jury trial on all four fraudulent transfer claims.

III.    **Conclusion**

As stated by the Court at the hearing held on the Defendant's Motion to Strike and reiterated in Section I, *supra*, the Defendant did not consent to a jury trial by filing of the Joint Consent, in which the parties consented "to a trial by jury in this adversary proceeding of all issues so triable, by and before the Bankruptcy Court." However, the arguments made by the Defendant in support of its Motion to Strike are not persuasive. For the reasons discussed above in Section II, the Court finds that the Plaintiff has a right to a jury trial on all four of the fraudulent transfer claims asserted in the Amended Complaint. Based upon the analysis articulated the Supreme Court of the United States, fraudulent transfer actions asserted by a trustee against a non-creditor defendant are legal actions which adjudicate private rights. Accordingly, a Seventh Amendment jury trial right exists.

It is irrelevant that the Plaintiff, the Debtors' Liquidating Trustee, is the party who requested a jury trial. The Court finds that neither the Debtors nor the Plaintiff, as Liquidating Trustee, waived their Seventh Amendment jury trial rights simply by filing for bankruptcy or by asserting the claims at issue in bankruptcy court. Finally, the Court rejects the Defendant's assertion that "Code-created" claims carry no right to a trial by jury. Accordingly, the Court denies the Defendant's Motion to Strike.

## <u>ORDER</u>

The Court, being fully advised in the premises and for the reasons discussed above, hereby **ORDERS AND ADJUDGES** that the Defendant's *Motion to Strike Jury Demand* (ECF No. 140) is **DENIED**.

### # # #

Copies furnished to:

Michael S Budwick, Esq.

Charles W Throckmorton, Esq.